UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ARROW ELECTRONICS, INC.<br>A New York Corporation,<br><br>    Plaintiff,<br>vs.<br><br>AC TECHNOLOGY, INC.<br>22695 Commerce Center Court<br>Dulles, VA 20166<br><br>and<br><br>EARLE D. MUNNS, JR.<br>11660 Great Falls Way<br>Great Falls, VA 22066<br><br>and<br><br>MICHAEL ANDREW BYRD<br>2201 Darnell Court<br>Bowie, MD 20721<br><br>    Defendants. | ) Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**FOR BREACH OF CONTRACT; FRAUD AND CONVERSION**

Plaintiff, ARROW ELECTRONICS, INC., a New York Corporation (hereinafter

referred to as "ARROW") files this Complaint against Defendants AC Technology, Inc.

("AC"); Earle D. Munns, Jr., ("MUNNS") and Michael Andrew Byrd ("BYRD") for its claims as follows:

I.

**PARTIES, JURISDICTION AND VENUE**

1. Arrow Electronics, Inc. ("ARROW") is a New York Corporation with its principal place of business at 50 Marcus Drive, Melville, NY 11747-4210 along with offices throughout the United States including an office located in Englewood, Colorado.

2. Defendant AC is a corporation organized under the laws of the Commonwealth of Virginia whose principal place of business is 22695 Commerce Center court, Dulles, Virginia 20166.

3. Defendant Earle D. Munns, Jr. ("MUNNS") is an individual who (I) lives and resides at 11660 Great Falls Way, Great Falls, Virginia 22066 and (II) formally conducted business in Dulles, Virginia as the Chief Executive Officer of AC. Based upon information and belief, it is herein alleged that Earl D Munns, Jr. owns 52.5% of the shares of AC.

4. Defendant Michael Andrew Byrd ("BYRD") is an individual who (I) lives and resides at 2201 Darnell Court, Bowie, Maryland 20721 and (II) formally conducted business in Dulles, Virginia as the Executive Vice President of AC. Based upon information and belief, it is herein alleged that Michael Andrew Byrd owns 42.5% of the shares of AC.

5. ARROW is informed, believes and thereon alleges that at all times MUNNS controlled and dominated AC, and AC at all times herein was the alter ego of MUNNS. ARROW is informed, believes and thereon alleges that there is and at all times

mentioned there has been a unity of interest and ownership between MUNNS and AC such that any individuality and separateness between them has ceased to exist. That to prevent the sanctioning of fraud or the promotion of injustice, the individuality and separateness of the corporate entity should be disregard so that equity and justice can occur. MUNNS used AC as a mere shell and sham company for purposes of systematically and conscientiously unjust enriching MUNNS at the expense of ARROW and commit fraud and conversion and other wrongful acts against ARROW.

6.   ARROW is informed, believes and thereon alleges that at all times BYRD controlled and dominated AC, and AC at all times herein was the alter ego of BYRD. ARROW is informed, believes and thereon alleges that there is and at all times mentioned there has been a unity of interest and ownership between BYRD and AC such that any individuality and separateness between them has ceased to exist. That to prevent the sanctioning of fraud or the promotion of injustice, the individuality and separateness of the corporate entity should be disregard so that equity and justice can occur. BYRD used AC as a mere shell and sham company for purposes of systematically and consciously unjust enriching BYRD at the expense of ARROW and commit fraud and conversion and other wrongful acts against ARROW.

7.   The amount in controversy in this proceeding, exclusive of interest and cots, exceeds the sum of $75,000.00.

8.   Jurisdiction and venue are proper in this Court pursuant to the terms of 28 U.S.C. § 1332(a) and 28 U.S.C § 1391.

## II.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

9.  ARROW is engaged in the business as a global provider of products, services and solutions to industrial and commercial users of electronics components and enterprise computing solutions with its corporate offices in the City of Melville, State of New York with offices throughout the United States including Englewood, Colorado.

10.  AC purports to be a "Service-Disabled Veteran Owned Small Business Technology and Services Provider" to the federal government and privately owned companies.

11.  AC acts as a "reseller" of technology related products, procuring products as required by the particular contract, then generated an invoice payable from the contracting party to AC.

12.  The business relationship between the parties consisted of ARROW as a distributor sells products to AC pursuant to purchase orders submitted and AC as the reseller would then sell the products to their end users, which were government entities.

13.  On July 30, 2008, ARROW and BYRD on behalf of and as an authorized officer of AC executed a Security Agreement in which AC granted ARROW a Purchase Money Security Interest to secure AC's obligations under the Security Agreement including all electronic merchandise and goods and other products sold to AC identified in AC's purchase orders as well as all accounts, accounts receivables, or other rights to payments derived from the sale of goods sold and all proceeds and the products thereof.  (A true and correct copy of the Security Agreement is attached hereto as Exhibit "1").

14.  On July 30, 2008, BYRD on behalf of and as an authorized officer AC executed an Amendment to the Security Agreement.  (A true and correct copy of the Amendment to the Security Agreement is attached hereto as Exhibit "2").

15.  ARROW has properly perfected the security interests granted to it pursuant to the Security Agreement by filing a UCC1 Financing Statement with the Virginia Secretary of State.  (A true and correct copy of the UCC1 Financing Statement is attached hereto as Exhibit "3").

16.  Pursuant to the Security Agreement and all written agreements, instructions and documents executed in connection therewith, ARROW has a superior priority interest in and to all property and assets of AC.

17.  On August 15, 2008, ARROW delivered to Bank of America, a primary lender of AC, a certified letter stating that ARROW holds and has acquired a Purchase Money Security Interest in inventory collateral, including but not limited to, all electronic merchandise and goods and other products sold to AC.  (A true and correct copy of the certified letter is attached hereto as Exhibit "4").

18.  Pursuant to Section 4(a) of the Security Agreement, payment for the goods ordered were to be paid directly to ARROW.  Payments were to be sent to ARROW'S "lockbox" by the end user.  AC was to instruct the end users and specify on their invoices to the end user to remit all payments as follows:

AC Technology, Inc.
P.O. Box 18803
Newark, NJ 07191-8803

19.  Pursuant to the Security Agreement, AC promised and agreed to obtain payment from the end user and to ensure that the proceeds were delivered promptly to

ARROW.  Further, AC agreed not to commingle the proceeds with any other property or proceeds and agreed not to deposit the proceeds in any bank account.

20.  Pursuant to Section 5 of the Security Agreement, the assigned funds which constitute payment pursuant to the Security Agreement, are the sole property of ARROW.  AC agreed that if checks were received by them, they would immediately forward said checks to the lockbox address or if the funds are directly deposited into AC's bank account, AC would make payment to ARROW within 24 hours.

21.  Further, on July 30, 2008, BYRD executed on behalf of and as an authorized officer of AC, a Limited Power of Attorney authorizing ARROW to endorse checks on behalf of AC.  (A true and correct copy of the Limited Power of Attorney is attached hereto as Exhibit "5").

22.  AC, MUNNS and BYRD either instructed end users to make payment directly to them or received payments from end users on certain invoices which were the sole property of ARROW.  AC, MUNNS and BYRD maintained and misappropriated these funds and did not remit these funds to ARROW.  ARROW alleges that AC, MUNNS and BYRD diverted and misappropriated the amount of One Million Nine Hundred Nine Thousand Sixteen Dollars and Seventeen Cents ($1,909,016.17) are the rightful property of ARROW.  Further, there are outstanding purchase orders totaling the amount of One Million Three Hundred Eighty Seven Thousand One Hundred Eighty Six Dollars and Sixteen Cents ($1,387,186.16) which as of yet payment has not been remitted by the end user and ARROW is concerned that these end users will remit payment to AC, MUNNS and BYRD..

23.  As a result of AC's, default under the Security Agreement, ARROW has suffered damages, including without limitation for loss of its collateral security under the Security Agreement.

24.  AC have repeatedly have failed to honor the terms of the Security Agreement by instructing end users to remit payment or received payment directly to them instead of ARROW'S lock box and by failing to remit those fund they received to ARROW.

## COUNT I

### Breach of Contract - Action on the Security Agreement

25.  ARROW incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

26.  AC, MUNNS and BYRD have breached the Security Agreement by either instructing end users to remit payment directly to AC or by receiving payments from end users directly and failing to remit said payments to ARROW.

27.  AC, MUNNS, and BYRD have diverted funds which are the sole property of ARROW and have illegally retained funds from the end users on purchase orders numbers 89180, 89293 and 78832 in the total amount of One Million Nine Hundred Nine Thousand Sixteen Dollars and Seventeen Cents ($1,909,016.17) plus interest, attorney's fees, costs and expenses.

28.  Further, purchase orders numbers 99321, 99307 and 89302 in the amount of One Million Three Hundred Eighty Seven Thousand One Hundred Eighty Six Dollars and Sixteen Cents ($1,387,186.16) remain outstanding and ARROW believes that these funds will also be diverted by AC, MUNNS and BYRD.

29.  AC, MUNNS and BYRD have refused and continue to refuse to pay said sums.

WHEREFORE, ARROW hereby demand the entry of an order entering judgment in favor of ARROW and against Defendants, AC, MUNNS and BYRD in the amount of at least Three Million Two Hundred Ninety Six Thousand Two Hundred Two Dollars and Thirty Three Cents ($3,296,202.33), plus interest, costs and attorney's fees for such other and further relief as this Court deems just and equitable.

### COUNT 2

**Fraudulent Misrepresentation against Defendants, MUNNS and BYRD**

30.  ARROW incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

31.  MUNNS and BYRD have made false representations to ARROW in connection with the Security Agreement.  MUNNS and BYRD represented, promised and agreed to instruct end users to make all payments directly to ARROW'S bank lockbox and to include such language specifically on each invoice submitted to the end user.  MUNNS and BYRD promised and agreed to use reasonable diligence to obtain payment from the end user and to ensure that the proceeds were delivered directly and promptly to ARROW.  Further MUNNS and BYRD promised to not deposit the proceeds in their bank accounts.  MUNNS and BYRD further represented that if they did receive funds which were the property of ARROW, they would immediately forward the said funds to ARROW's lockbox or remit payment to ARROW within 24 hours.

32.  These representations by MUNNS and BYRD were false and involved facts material to establishment of the Security Agreement.

33. The false representations by MUNNS and BYRD were made intentionally and knowingly.

34. The false representations by MUNNS and BYRD were intended to mislead and defraud ARROW.

35. ARROW at all times reasonably relied upon the false representations by MUNNS and BYRD and continued to sell merchandise pursuant to the purchase orders submitted.

35. As a result of the false representations by MUNNS and BYRD to ARROW, ARROW has suffered damages.

WHEREFORE. ARROW hereby demands the entry of an order entering judgment in favor or ARROW and against Defendants, AC, MUNNS and BYRD, jointly and severally, in the amount of at least Three Million Two Hundred Ninety Six Thousand Two Hundred Two Dollars and Thirty Three Cents ($3,296,202.33), plus interest, costs and attorney's fees for such other and further relief as this Court deems just and equitable.

## COUNT 3

### Constructive Fraud against Defendants, MUNNS and BYRD

37. ARROW incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

38. MUNNS and BYRD have made false representations to ARROW in connection with the Security Agreement. MUNNS and BYRD represented, promised and agreed to instruct end users to make all payments directly to ARROW'S bank lockbox and to include such language specifically on each invoice submitted to the end user. MUNNS and BYRD represented, promised and agreed to use reasonable

diligence to obtain payment from the end user and to ensure that the proceeds were delivered directly and promptly to ARROW.  Further MUNNS and BYRD promised to not deposit the proceeds in their bank accounts.  MUNNS and BYRD further represented that if they did receive funds which were the property of ARROW, they would immediately forward the said funds to ARROW's lock box or remit payment to ARROW within 24 hours.

39.  These representations by MUNNS and BYRD were false and involved facts material to establishment of the Security Agreement.

40.  In the event MUNNS and BYRD did not intentionally mislead ARROW, their representations and promises to ARROW were made with reckless abandon and disregard for truth.

41.  The false representations by MUNNS and BYRD were intended to mislead and defraud ARROW.

42.  ARROW at all times reasonably relied upon the false representations by MUNNS and BYRD and continued to sell merchandise pursuant to the purchase orders submitted.

43.  As a result of the false representations by MUNNS and BYRD to ARROW, ARROW has suffered damages.

WHEREFORE. ARROW hereby demands the entry of an order entering judgment in favor or ARROW and against Defendants, AC, MUNNS and BYRD, jointly and severally, in the amount of at least Three Million Two Hundred Ninety Six Thousand Two Hundred Two Dollars and Thirty Three Cents ($3,296,202.33), plus interest, costs and attorney's fees for such other and further relief as this Court deems just and equitable.

## COUNT 4

### Conversion against Defendants, MUNNS and BYRD

44.  ARROW incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

45.  MUNNS and BYRD have breached the Security Agreement by failing to instruct end users to remit payment directly to ARROW's lockbox as set forth in section 4(a) of the Security Agreement and instead instructed end users to remit payment directly to MUNNS and BYRD.

47.  MUNNS, and BYRD have converted these funds which are the sole property of ARROW and have illegally retained these funds for their own use and benefit or the use and benefit of AC from the end users on purchase orders numbers 89180, 89293 and 78832 in the total amount of One Million Nine Hundred Nine Thousand Sixteen Dollars and Seventeen Cents ($1,909,016.17) plus interest, attorney's fees, costs and expenses.

47. ARROW and duly demand that MUNNS and BYRD return said funds to them. MUNNS and BYRD have refused to return said funds to ARROW and have knowingly and intentionally retained said funds thereby converting them for their own use and benefit.

WHEREFORE, ARROW hereby demand the entry of an order entering judgment in favor of ARROW and against Defendants, AC, MUNNS and BYRD jointly and severally in the amount of at least Three Million Two Hundred Ninety Six Thousand Two Hundred Two Dollars and Thirty Three Cents ($3,296,202.33), plus interest, costs and attorney's fees for such other and further relief as this Court deems just and equitable.

## COUNT 5

**Breach of Fiduciary Duty against Defendants, MUNNS and BYRD**

48.  ARROW incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

49.  ARROW is informed, believes and thereupon alleges that MUNN AND BYRD as directors and officers of a corporation, are liable for inadequate and inaccurate public disclosures of material corporate information.  MUNN AND BYRD as directors and officers have the duty to disclose in a non misleading manner all material facts bearing on a decision.

50.  MUNN AND BYRD are officers and directors of AC owed fiduciary duties of loyalty, good faith and fair dealing to ARROW.

51.  MUNN AND BYRD violated applicable law by directly breaching and/or aiding the other defendants in their fiduciary duties of loyalty, due care and fair dealing.

52.  MUNN AND BYRD breached their fiduciary duty by diverting and misappropriating funds which were the sole property of ARROW.

53.  ARROW has suffered substantial injury as a result of MUNN AND BYRD'S breaches of fiduciary duties.  As a result, ARROW is entitled to an award of damages in an amount to be determined at trial.

54.  Because of the deliberate, malicious, and willful conduct of MUNN AND BYRD in breaching their fiduciary duties, ARROW is entitled to punitive damages, in an amount that will serve to punish Defendants and deter them and others from future similar acts.

WHEREFORE, ARROW hereby demand the entry of an order entering judgment in favor of ARROW and against Defendants, AC, MUNNS and BYRD jointly and severally in the amount of at least Three Million Two Hundred Ninety Six Thousand Two Hundred Two Dollars and Thirty Three Cents ($3,296,202.33), plus interest, costs and attorney's fees for such other and further relief as this Court deems just and equitable.

Respectfully Submitted,

Dated: July 2, 2009                    GALEN & DAVIS LLP

By: _____
Jeffrey M. Galen, Esq.
GALEN & DAVIS LLP
16255 Ventura Blvd., Suite 900
Encino, CA 91436
818-986-5685 Telephone
818-986-1859 Facsimile
Attorneys for Plaintiff,
Arrow Electronics, Inc.

Exhibit "1"

 

.erprise Computing Solutions

**Security Agreement**
(Product and Payment Assignment as Collateral – **Without** Acknowledgment by End-User)

**Secured Party**:    Arrow Electronics, Inc. and subsidiaries
7459 S. Lima
Englewood, Co  80112

**Debtor**:    AC Technology, Inc.
22695 Commerce Center Ct. Ste. C
Dulles, VA 20166
FEIN: 54-1600337

1.    **Definitions**

As used in this security agreement,

a.    *"Collateral"* means the products described in debtor's purchase order numbers **89064** (or any additional purchase orders issued to secured party by debtor and accepted by secured party under an amendment to this agreement) issued to secured party and the proceeds derived from the sale of said product to debtor's customer, **GSA** (end-user)  (or any other end-user accepted by secured party in an amendment to this agreement),in accordance with end-user's purchase order numbers **GSAGS09A08DFM3534** issued to debtor (or any other purchase order issued to debtor and accepted by secured party in an amendment to this agreement).  Copies of all purchase orders are attached to this security agreement and are incorporated herein by this reference.

b.    *"Debtor"* means Arrow's customer, i.e. **AC Technology, Inc.**

c.    *"Indebtedness"* means debtor's obligations to secured party resulting from debtor's purchase of products from secured party as set out in debtor's purchase orders identified above (or any additional purchase order issued to secured party by debtor and accepted by secured party in a written amendment to this security agreement).

d.    *"Lien"* means any security interest, mortgage, pledge, attachment, claim, charge, encumbrance, and/or agreement retaining title as to the collateral.

e.    *"Obligations"* means existing and future indebtedness and liability of debtor to secured party, including attorneys' fees incurred by secured party in enforcing this security agreement or collecting payment under it.

f.    *"Account"* means a right to payment for goods sold or services rendered by debtor.

g.    *"Product"* means all items purchased by debtor from secured party in accordance with debtor's purchase orders identified above (or in any amendment to this security agreement) in which debtor has or later acquires a right, and all documents of title covering all or part of the product.

h.    *"Receivable"* means the account, instrument, document, chattel paper, or other general intangibles relating to the product purchased by debtor from secured party in accordance with its purchase orders identified above (or in any purchase order issued to secured party by debtor and accepted by secured party in a written amendment to this agreement).

I.    Terms identified in the Uniform Commercial Code not otherwise defined in this security agreement are used in this security agreement as defined in that Code on the date of this agreement.

2.    **Grant of Security Interest**

Debtor grants secured party a purchase money security interest in the property described below to secure debtor's obligations under this security agreement.  That property, called the collateral, consists of a continuing purchase money security interest in the following:

a.    Any and all electronic merchandise and/or other products or merchandise sold to debtor by secured party as specifically identified in debtor's purchase order numbers **89064** (or any other purchase order accepted by secured party in an amendment ot this agreement), together with any improvements, replacements, accessions, and additions to it.

b.    Accounts, deposit accounts, accounts receivable, chattel paper, instruments, documents, general intangibles, or other right to payment (collectively, "right to payment"), together with all renewals, and including all securities, guaranties, warranties, indemnity agreements, insurance policies, and other

agreements pertaining to such rights to payment derived from the sale of that electronic merchandise and/or other products defined in paragraph 1(g) prior.

3. Debtor promises:
   a. To pay the obligations to secured party when they are due in the manner prescribed by paragraph 4(a) of this security agreement.
   b. To pay all expenses, including attorneys' fees, incurred by secured party in the perfection, preservation, realization, enforcement, and exercise of its rights under this agreement.
   c. To indemnify secured party against loss of any kind, including reasonable attorneys' fees, caused to secured party by reason of its interest in the collateral.
   d. To conduct debtor's business efficiently and without voluntary interruption.
   e. Not to sell, lease, transfer, or otherwise dispose of the product defined in paragraph 1(g), except, before the occurrence of a default, for cash proceeds of accounts collected from the sale of said products to the end-user acknowledging its obligations under this security agreement (or any other end-user acknowledging its obligations under an amendment to this security agreement).
   f. To notify secured party promptly in writing of any default, potential default, or any development that might have a material adverse effect on the collateral.
   g. To execute and deliver to secured party all financing statements and other documents that secured party requests, in order to maintain a first perfected purchase money security interest in the collateral. Said financing statements once executed, delivered, and filed are attached to this security agreement and by this reference made a part hereof.
   h. Not to make or agree to make any reduction in the original amount owing on a receivable, or to accept less than the original amount in satisfaction of a receivable as it relates to the product defined in paragraph 1(g) and in accordance with end-user's purchase order (including any purchase order issued by an end-user accepted by secured party in an amendment to this security agreement).
   i. To deliver to secured party (1) duplicate invoices for each account relating to debtor's sale of the product defined in paragraph 1(g), bearing the language of assignment as secured party specifies, (copies of said invoice(s) are attached to this security agreement and by this reference made a part hereof), and; (2) the originals of all receivables, endorsed and assigned as secured party requests.
   j. To keep the product defined in paragraph 1(g) in good repair and not to use the product for any unlawful purpose or in any way that would void any effective insurance.
   k. To maintain insurance coverage on the product defined in paragraph 1(g) above, in amounts and under policies sufficient to protect secured party's interest in the product.

4. Payment Terms and Collection of Proceeds:

   Debtor promises:
   a. To instruct end-user to make all payments as follows: **AC Technology, Inc., PO Box 18803, Newark, NJ 07191-8803** and to include the language specified by secured party on each invoice submitted to end-user.
   b. To receive and use reasonable diligence in obtaining payment from the end-user and to ensure that the proceeds are delivered promptly to the secured party.
   c. Not to commingle the proceeds with any other property or proceeds. This includes debtor's promise not to deposit the proceeds to any bank account.
   d. To provide any service and perform any other acts necessary to keep the proceeds free and clear of defenses, rights of set-off, and counterclaims.
   e. To pay all expenses incurred by secured party in connection with the collection of the proceeds, including expenses of and incidental to accounting, correspondence, collection effort, filing, recording, and record keeping.

5. **The assigned funds, which constitute payment pursuant to this agreement, are the property of secured party. If checks are received by debtor, they will immediately forward to address in #4 above, or if funds are directly deposited into debtor's bank account, debtor will make payment to secured party within 24 hours.**

   _____ **(Initial Here)**

6. Power of Attorney
   a. Debtor hereby appoints Arrow Electronics, Inc. and subsidiaries, (see Limited Power of Attorney attached to this agreement and incorporated herein by reference) or any other person whom secured party may designate, as debtor's attorney in fact, with the following powers:
   b. To perform any of debtor's obligations under the agreement in debtor's name or otherwise.
   c. To give notice of debtor's right to payment, to enforce that right, and to make extension agreements with respect to it.

d. To prepare and file financing statements, continuation statements, statements of assignment, termination statements, and the like, as necessary to perfect, protect, preserve, or release secured party's interest in the collateral.

e. To endorse debtor's name on instruments, documents, or other forms of payment or security that come into secured party's possession.

f. To take cash in payment of obligations.

g. To verify information concerning rights to payment by inquiry in its own name or in a fictitious name.

h. To prepare, execute, and deliver insurance forms; to adjust insurance claims; to receive payment under insurance claims; and to apply such payment to reduce debtor's obligation.

7. Debtor's Warranties and Representations

Debtor covenants, warrants, and represents as follows:

a. Debtor is a **Corporation** duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization, and has all necessary authority to conduct its business wherever it is conducted.

b. Debtor is authorized to execute and deliver this security agreement. The security agreement is a valid and binding obligation of debtor. This security agreement together with all attachments and any amendments hereto, creates a perfected, first priority purchase money security interest enforceable against the collateral in which debtor now has rights, and will create a perfected, first priority purchase money security interest enforceable against the collateral in which debtor later acquires rights, when debtor acquires those rights.

c. Neither the execution and delivery of this security agreement, nor the taking of any action in compliance with it, will (1) violate or breach any law, regulation, rule, order, or judicial action binding on debtor, any agreement to which debtor is a party, debtor's articles of incorporation or bylaws; or (2) result in the creation of a lien against the collateral except that created by this security agreement.

d. A schedule attached to and made a part of this security agreement states, without exceptions:

   (1) The location of debtor's chief executive office and the name of its chief executive officer.

   (2) All names under which debtor has conducted its business.

   (3) The names and addresses of all secured creditors maintaining a valid and binding security interest in inventory, equipment, and/or receivables. In addition, this list will also identify the state and/or other jurisdiction in which any such financing statement is filed along with the file number and filing date.

   (4) The General Terms & Conditions of Sale which govern the transactions contemplated by this security agreement and any and all amendments hereto unless specifically modified by this security agreement.

8. Termination

This security agreement will continue in effect even though from time to time there may be no outstanding obligations or commitments under this agreement or any amendment to it. The agreement will terminate when (a) debtor completes performance of all obligations to secured party, including without limitation the repayment of all indebtedness by debtor to secured party, including any indebtedness derived from an amendment to this security agreement; (b) secured party has no commitment that could give rise to an obligation; and © debtor has notified secured party in writing of its desire to terminate this Security Agreement.

9. Default

Debtor will be in default under this agreement if:

a. Debtor fails to pay the indebtedness owed to secured party when due, or otherwise.

b. Debtor fails to properly instruct end-user as to properly directing assigned accounts as provided in this agreement under paragraph 4(a).

c. Debtor commits any breach of this agreement, or any present or future amendment to this agreement, or any other agreement between debtor and secured party evidencing the obligation or securing it.

d. Any warranty, representation, or statement, made by or on behalf of debtor in or with respect to the agreement, is false.

e. The collateral is lost, stolen, or damaged.

f. There is a seizure or attachment of, or a levy on, the collateral.

g. Debtor ceases operations, is dissolved, terminates its existence, does or fails to do anything that allows obligations to become due before their stated maturity, or becomes insolvent or unable to meet its debts as they mature.

10. Remedies

When an event of default occurs secured creditor may:

a. Declare the obligations immediately due and payable without demand, presentment, protest, or notice to debtor, all of which debtor expressly waives.

b. Terminate any obligation to make future product shipments to debtor under this security agreement or any amendment hereto.

c. Exercise all rights and remedies available to a secured creditor after default, including but not limited to the rights and remedies of secured creditors under the Uniform Commercial Code.

d. Perform any of debtor's obligations under this agreement for debtor's account. Any money expended or obligations incurred in doing so, including reasonable attorneys' fees and interest at the highest rate permitted by law, will be charged to debtor and added to the obligation secured by this agreement.

e. Notify end-user about the existence of this security agreement, provide end-user with a copy of this agreement, attachments and amendments, and require end-user to make payments of any amounts owed to debtor *for any reason* directly to secured party at the place and in the manner specified in paragraph 4(a) until the amount owed to secured party under this agreement and attachments or any amendments to it has been paid in full.

10A. **Costs and Attorneys' Fees**

Debtor will pay all costs and expenses of collection, including reasonable attorneys' fees.

11. **Waiver by Secured Party**

No waiver by secured party of any breach or default will be a waiver of any breach or default occurring later. A waiver will be valid only if it is in writing and signed by secured party.

12. **Survival of Representations and Warranties**

Debtor's representations and warranties made in this security agreement will survive its execution, delivery and termination.

13. **Assignment**

This security agreement will bind and benefit the successors and assignees of the parties, but debtor may not assign its rights under the agreement without secured party's prior written consent.

14. **Governing Law**

This security agreement will be governed by the laws of the State of Colorado.

15. **Entire Agreement**

This security agreement together with all attachments incorporated by reference and any written amendments to this agreement is the entire agreement, and supersedes any prior agreement or understandings, between secured party and debtor relating to the collateral.

16. **Notices**

Notices under this security agreement and any written amendment to this agreement are considered to be served three days after they are deposited in the United States mail, with prepaid first-class postage, addressed to the other party at the address listed and to the attention of the chief executive officer identified in paragraph 6(d)(1) of this agreement. Either party may change its address for service of notice, by notice to the other.

FACSIMILE SIGNATURES TO THIS AGREEMENT ARE LEGALLY VALID AND BINDING. ADDITIONALLY, A PHOTOSTATIC COPY OF THIS SECURITY AGREEMENT IS AS LEGALLY BINDING AS THE ORIGINAL.

Dated: 07/30/2008

Arrow Electronics, Inc and subsidiaries.

By: _____

Name: _____

Title: Manager, Financial Services

AC Technology, Inc.

By: _____

Name: Michael A. Byrd

Title: Executive Vice President

Exhibit "2"



Enterprise Computing Solutions

**Amendment to Security Agreement**
**(*Without* Acknowledgment by End-User)**

Secured Party:    Arrow Electronics, Inc. and subsidiaries
7459 South Lima
Englewood, CO 80112

Debtor:    **AC Technology, Inc**
**22695 Commerce Center Ct. Ste. C**
**Dulles, VA 20166**
FEIN: **54-1600337**

The Security Agreement entered into **Date of Original Security Agreement**, between the secured party and debtor referenced above is hereby amended as outlined below.

1.    Any and all references to debtor's original purchase order number **89064** shall now include debtor's additional purchase order number        (copy attached to this amendment and incorporated herein by reference).

2.    Any and all references to debtor's original end-user        shall now include debtor's additional end-user

3.    Any and all references to the original end-user's purchase order number,Ø shall now include this end-user's purchase order        (copy attached to this amendment and incorporated herein by reference).

4.    The UCC-1 Financing Statement filed **Filing date of Original UCC**, with the **State UCC Filed In** Secretary of State includes language referring to this amendment and said UCC-1 Financing Statement will continue in full force and effect with regard to the collateral herein until debtor has fulfilled its obligations to secured party as more specifically set forth in the Security Agreement

5.    Debtor will deliver to secured party (1) duplicate invoices for each account relating to debtor's sale of the product defined in paragraphs 1 through 3 above, bearing the language specified by secured party, (copies of said invoice(s) are attached to this Amendment to Security Agreement and by this reference made a part hereof).

This written amendment to the Security Agreement shall modify the original agreement as specifically set out above. Any and all terms, conditions and attachments to the original agreement not specifically amended herein are deemed a part of this Amendment and shall remain intact and unchanged and in full force and effect.

As with the original agreement, FACSIMILE SIGNATURES TO THIS AMENDMENT ARE AS LEGALLY BINDING AS THE ORIGINALS.   THIS DOCUMENT MAY BE SIGNED IN COUNTERPARTS WHICH WHEN READ TOGETHER WILL CONSTITUTE THE WHOLE.

Dated:  7/30/2008

Arrow Electronics, Inc. and subsidiaries

By: _____

Name: _____

Title:    Manager, Financial Services

AC Technology, Inc.

By: _____

Name:  _MICHAEL A. BYRD_

Title:   _EXECUTIVE VICE PRESIDENT_

Exhibit "3"

## SCHEDULE PURSUANT TO PARAGRAPH 3(g)
### (Attachment to Security Agreement or Amendment to Security Agreement)

Attach UCC Financing Statement

*The UCC Financing Statement must include the following collateral description:*

Any and all electronic merchandise and/or other products or merchandise sold to debtor by secured party as specifically identified in debtor's purchase order numbers **89064** (or any other purchase order accepted by secured party in an amendment to the security agreement entered into between debtor and secured party in **July, 2008**) together with any improvements, replacements, accessions, and additions to it.   In addition, accounts, deposit accounts, accounts receivable, chattel paper, instruments, documents, general intangibles, or other right to payment (collectively, "right to payment"), together with all renewals, and including all securities, guaranties, warranties, indemnity agreements, insurance policies, and other agreements pertaining to such rights to payment derived from the sale of any and all identified electronic merchandise and/or other products or merchandise.

## SCHEDULE PURSUANT TO PARAGRAPH 1(a)
### (Attachment to Security Agreement or Amendment to Security Agreement)

*Attach all Debtor's Purchase orders issued to Secured Party: GSA-89064, AFRL-89065,*
*MPO-89069,*
*MPO-89070,*
*DISA-89073*
*ONI-89074,*
*AFRL-89076,*
*DoL-89077,*
*AFRL-89082,*
*TKC-89083,*
*ManTech-89086,*
*AFRL-89087,*
*US Army-89088,*
*Air Force-89089,*
*Nat. Archives & Records Administration-89091,*
*Owl-89092,*
*Space Telescope Science-89094,*
*NOAA-89096,*
*OFHEO-89097,*
*Space Telescope Science Inst-89103,*
*AFRL-89107*

## SCHEDULE PURSUANT TO PARAGRAPH 1(a)
### (Attachment to Security Agreement or Amendment to Security Agreement)

*Attach all End-User's purchase orders issued to Debtor:*
*GS09Q08DFM3534*
*FA8751-08-P-0115,*
*H98230-08-P-3456,*
*H98230-08-C-1285,*
*HC1028-08-F-23430,*
*GS-35F-0459K,*
*FA8751-08-C-0007,*
*DOL082J12575,*
*FA8751-08-P-0117,*
*JM20000051,*
*MBI007171,*
*FA8751-08-P-0136,*
*AM2008-052,*
*FA3300-08-P-0168,*
*NAMA-08-F-0077,*
*239,*
*45008,*
*NEEF4100-8-44655,*
*OFHEOO8F6758,*
*45023,*
*W91247-08-P-0454*

Exhibit "4"

19-Aug-2008 05:03 PM Bank of America 703-761-8113      1/1

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

15 August 2008

Bank of America
8300 Greensboro Drive, Mezzanine Level
McLean, VA 22102

Re: Notice of Purchase Money Security Interest

     Please be advised that under the provisions of the Uniform Commercial Code that the undersigned holds and acquired, or expects to hold or acquire a purchase money security interest in inventory collateral including but not limited to the proceeds thereof, which inventory will from time to time hereafter be delivered to Debtor's address(es) listed herein.

     The purchase money security interest was created by and is pursuant to a security agreement entered into between:

SECURED PARTY:

     Arrow Electronics Inc
     7459 South Lima St., Bldg, 2
     Englewood, CO 80112

and the DEBTOR:

     AC Technology, Inc.
     DBA:
     22695 Commerce Center Court, Suite C
     Dulles, VA 20166

     This security interest is to be binding upon the above named Debtor and any and all of their DBAs at any and all present and future addresses.

     The inventory collateral consists, or will consist of the following items or types of inventory as described in the financing statement. Said inventory is more particularly described as follows:

     Any and all electronic merchandise and/or other products or merchandise sold to debtor by secured party as specifically identified in debtor's purchase order numbers 89064 (or any other purchase order accepted by secured party in an amendment to the security agreement) together with any improvements, replacements, accessions, and additions to it. In addition, accounts, deposit accounts, accounts receivable, chattel paper, instruments, documents, general intangibles, or other right to payment (collectively, "right to payment"), together with all renewals, and including all securities, guaranties, warranties, indemnity agreements, insurance policies, and other agreements pertaining to such rights to payment derived from the sale of any and all identified electronic merchandise and/or other products or merchandise.

By:      Arrow Electronics Inc
         7459 South Lima St., Bldg, 2
         Englewood, CO 80112



Exhibit "5"

## LIMITED POWER OF ATTORNEY PURSUANT TO PARAGRAPH 5(a)
### (Attachment to Security Agreement)

I, Michael A. Bryd, a duly authorized officer of **AC Technology, Inc.**, debtor, hereby provide Arrow Electronics, Inc. and subsidiaries, this Limited Power of Attorney and authority to execute negotiable instruments on behalf of debtor, with respect to this Security Agreement or any Amendment to this Security Agreement, and to deposit same to an appropriate Client Trust Account in accordance with the laws of the State of Colorado and the Business and Professions Code, Section 7211(a). This Limited Power of Attorney is also provided to allow Arrow Electronics, Inc and subsidiaries the authority to (a) perform any of debtor's obligations under the agreement in debtor's name or otherwise; (b) give notice of debtor's right to payment, to enforce that right, and to make extension agreements with respect to it; (c) sign debtor's name on and to prepare, file, and record original financing statements, continuation statements, statements of assignment, termination statements, and the like, as necessary to perfect, protect preserve, or release secured party's interest in the collateral; (d) To verify information concerning rights to payment by inquiry in its own name or in a fictitious name; and (e) To prepare, execute, and deliver insurance forms' to adjust insurance forms; to adjust insurance claims; to receive payment under insurance claims; and to apply such payment to reduce debtor's obligation. These rights are granted in conjunction with paragraph 6 of the Security Agreement and any Amendment to the Security Agreement.

FACSIMILE SIGNATURE TO THIS AGREEMENT IS LEGALLY VALID AND BINDING. ADDITIONALLY, A PHOTOCOPY OF THIS LIMITED POWER OF ATTORNEY IS AS LEGALLY BINDING AS THE ORIGINAL.

Executed this 30 day of July, 2008, at Dulles, VA.

*Note: This document must be...*

BY: _____

Name: _MICHAEL A. BYRD_

**Notarized:**

State of _VIRGINIA_
County of _LOUDOUN_

The foregoing instrument was acknowledged before me this _30th_ day of _July_, 2008, by _____
_MICHAEL A. BYRD._

_____
Notary Public
My Commission Expires: _NOV. 30, 2011_

Notary Seal:

DAVID A. SITEK
Notary Public
Commonwealth of Virginia
328884
My Commission Expires Nov 30, 2011

*OR*

**Witnessed:**

The above and foregoing limited power of attorney, consisting of one page, was on the above date signed by Michael A. Bryd on behalf of **AC Technology, Inc.**, debtor, in our presence. In the presence of each other, we have signed our names as attesting witnesses and acknowledge that we are each of legal age and not a party to the underlying agreement between debtor and Arrow. We declare under penalty of perjury that the foregoing is true and correct.

By: _____         By: _____

Name: _Stacie R Potter_              Name: _____